Below is an opinion of the court.

_____
THOMAS M. RENN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>BRIAN WILLIAM SMITH,<br>                    Debtor. | Case No. 20-62806-tmr7 |
| PERLENFEIN, INC., dba B&R AUTO WRECKING,<br>                    Plaintiff,<br><br>v.<br><br>BRIAN WILLIAM SMITH,<br>                    Defendant. | Adv. Proc. No. 21-6003-tmr<br><br><br>MEMORANDUM DECISION ON DISCHARGEABILITY[1] |

Plaintiff Perlenfein, Inc., dba B&R Auto Wrecking, filed this adversary proceeding against Defendant Brian William Smith in his chapter 7 bankruptcy case. Perlenfein requests that the court determine that the amount Smith owes to Perlenfein based on a settlement agreement

---

[1] This disposition is specific to this case. It may be cited for whatever persuasive value it may have.

Page 1 of 14 – MEMORANDUM DECISION ON DISCHARGEABILITY

between the parties is not dischargeable under 11 U.S.C. §§ 523(a)(2), (4), and (6).[2] We conducted a trial on the issues and heard argument from the parties. I have reviewed the pleadings and documents filed by the parties, including the motions, responses, memoranda, and briefs related to this matter, and I have considered the testimony and other evidence presented by the parties. This matter is ready for a ruling, and I find the debt is not dischargeable.

**Facts:**

Perlenfein, an Oregon corporation family-owned for decades, operates a business that purchases wrecked vehicles to resell the parts. Smith was a childhood friend of the owners and worked for Perlenfein on and off for 20 years. At the times relevant to this complaint, Smith worked in sales and sales management for Perlenfein. Part of Smith's job included making data entry into the company's computer system. Perlenfein alleges that, while he held this position, Smith committed various fraudulent acts including increasing sales by selling products for free or below authorized prices and providing fake purchase order numbers to hide his activities. Perlenfein alleges that Smith's fraud resulted in losses of more than $2.5 million to the corporation and the overpayment of commissions and bonuses to Smith in the minimum amount of $270,000.

Following discovery of the alleged fraudulent conduct, Perlenfein terminated Smith's employment effective August 24, 2018. On that same date, the parties entered into a Confidential Severance Agreement. The parties later agreed to amend the terms of the agreement, and they entered into a Restated Confidential Severance and Settlement Agreement dated effective January 1, 2019 (Settlement Agreement). Smith admitted no wrongdoing in the Settlement

---

[2] Unless otherwise indicated, all chapter and section references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101-1532.

Agreement and denied he committed fraud. The parties have agreed that the Settlement Agreement is valid and enforceable, subject to the discharge issues in this case. The Settlement Agreement required Smith to pay Perlenfein the sum of $270,000, in quarterly payments of $10,000. Smith made five quarterly payments totaling $50,000, but then he defaulted on his payment obligations. On December 30, 2020, Smith filed his voluntary chapter 7 bankruptcy petition. Perlenfein filed Proof of Claim #3-1 asserting an unpaid balance of $220,200 as of the bankruptcy filing date. Smith has not objected to Proof of Claim #3-1.

Perlenfein timely filed this adversary proceeding against Smith, seeking a determination that the balance owed under the Settlement Agreement is excepted from the discharge. After Smith filed his answer and counterclaim, Perlenfein filed a motion for summary judgment asking the court to strike Smith's affirmative defenses of accord and satisfaction, waiver, and release. *See* ECF No. 7. Smith responded to the motion and filed his own motion for summary judgment with respect to all claims for relief in the complaint. *See* ECF No. 10. I granted Perlenfein's motion, striking affirmative defenses 3, 4, and 5, as well as noting that the "Reservation of Rights" contained in affirmative defense 6 was ineffective. I also denied Smith's motion for summary judgment. *See* Order Granting and Denying Motions, ECF No. 22.

Smith later filed a motion to compel production of certain specified sales reports from 2011-2018. *See* ECF No. 37. In a letter opinion and separate order, I denied the motion after finding that whether Perlenfein profited from Smith's work did not affect the claims in the adversary. *See* ECF No. 39 and ECF No. 40. Based on Smith's admission that the Settlement Agreement was "valid and enforceable," I found that any evidence of sales or profits was not relevant, because the damages at issue in this adversary were set by the Settlement Agreement. Smith moved for "reconsideration" of that order, and I denied that motion. *See* ECF No. 53.

**Jurisdiction:**

The bankruptcy court has jurisdiction to decide the claims at issue under 28 U.S.C. §§ 1334 and 157(a), and Oregon Local District Court Rule 2100-2. This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The parties have consented, and I find that this court has constitutional authority to enter final orders and judgments in this proceeding.

**Discharge:**

Section 727(a) requires the court to grant the debtor a discharge in a chapter 7 case unless one of the limitations apply. § 727(a). None of the § 727(a) limitations apply in this case. Therefore, the debt from the Settlement Agreement will be discharged unless it qualifies under an exception described in § 523. Perlenfein alleges that the exceptions in §§ 523(a)(2), (4), and (6) apply to except its debt from the discharge.

A court must construe any exception to the discharge narrowly in favor of the debtor, because of the policy objectives supporting a debtor's fresh start. *See Daniels v. Holman (In re Holman)*, 536 B.R. 458, 464 (Bankr. D. Or. 2015) (settled law); *Snoke v Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir. 1992) (strictly construed). The burden of proof falls on a creditor seeking to except a debt from discharge, and the burden is by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291 (1991); *Suarez v. Barrett (In re Suarez)*, 400 B.R. 732, 736 (9th Cir. BAP 2009), *aff'd*, 529 F. Appx. 832 (9th Cir. 2013) (unpublished).

**Section 523(a)(2)(A):**

Section 523(a)(2)(A) excepts from a debtor's discharge all debts for money obtained by "false pretenses, a false representation or actual fraud." § 523(a)(2)(A). To prevail on a claim under § 523(a)(2)(A), a creditor must prove that: "(1) the debtor made a representation, or omitted to state a material fact(s) to the creditor; (2) at the time that the subject representation or

Page 4 of 14 – MEMORANDUM DECISION ON DISCHARGEABILITY

Case 21-06003-tmr    Doc 56    Filed 09/26/22

omission was made, the debtor knew that the representation was false, or knew that the omission created a false statement, and the debtor was under a duty to disclose the omitted information; (3) the debtor made the subject representation or omission with the intention of deceiving the creditor; (4) the creditor justifiably relied; and (5) the creditor sustained damages as the proximate result of the representation or omission having been made." *Daniels v. Holman*, 536 B.R. at 464 (citing *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1246 n.4 (9th Cir. 2001); *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000).

Based on the evidence presented, I find Smith made representations and omissions to Perlenfein that he knew at the time were false. Those representations were numerous (at least hundreds) and included those made using fake credits, missing purchase orders, deleted tracking numbers, duplicate orders, and false purchase orders. As supported by Smith's testimony and written admissions, Smith knew the representations and omissions were false or created a false statement. They served no purpose other than to benefit Smith personally and to harm Perlenfein. As an employee entrusted to input the computer data, Smith was under a duty to disclose the missing information and input the data accurately. Smith claims his only intent was to increase the profits to Perlenfein, but I find that he was hiding the information so it could not be tracked, and to benefit himself. The false numbers made it appear that sales were increasing at a rate higher than reality, and those false sales generated higher personal commissions and bonuses for Smith. The actions also resulted in Smith being awarded a higher salary based on the fraudulent numbers. In addition, Smith's actions required Perlenfein to pay significant amounts in credit card chargebacks, vendor purchases, and client credits to correct the errors. Perlenfein suffered significant damages from its payment to Smith of the commissions, bonuses, and higher salary,

as well as in the amounts paid to others. Perlenfein provided substantial evidence that Smith's actions cost it more than $2.5 million, and I find that it met its burden to prove damages resulting from Smith's false pretenses, false representations, and actual fraud. Those total damages exceed the amount claimed by Perlenfein in this adversary.

Smith claims that Perlenfein's management knew and authorized his actions and that Perlenfein should have monitored his actions better and, thus, cannot rely on the representations asserted. Section 523(a)(2)(A) does not state the required degree of reliance, but the Ninth Circuit citing the Supreme Court has held that a creditor's reliance "need be only justifiable, not reasonable." *Apte v. Romesh Japra, M.D., F.A.C.C., Inc., (In re Apte)*, 96 F.3d 1319, 1322 (9th Cir. 1996) (citing *Field v. Mans*, 516 U.S. 59, 74 (1995)). "[A] person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" *Field v. Mans*, 516 U.S. at 70. At trial, Brian Perlenfein, Jeff Helget, and Sarah Higgins all testified that the company relied on representations made by Smith in the computer records, and I find their testimony credible and sufficient to prove the claims.

"Bankruptcy law… does not require [plaintiffs] to have investigated the [defendants'] factual representations in order to demonstrate justifiable reliance." *Diamond v. Kolcum (In re Diamond)*, 285 F.3d 822, 827 (9th Cir. 2002). *See also Field v. Mans*, 516 U.S. at 70 (justifiable reliance not dependent on duty to investigate); *In re Apte*, 96 F.3d at 1322; *Defined Benefit Pension Plan v. Kirsh (In re Kirsh)*, 973 F.2d 1454, 1459 (9th Cir. 1992) ("[N]egligence in failing to discover an intentional misrepresentation is no defense to fraud."). Therefore, I find that Perlenfein justifiably relied on Smith's representations made in the entries in the company's software system.

Smith also argues that Perlenfein was not damaged, because his actions resulted in greater profits to the company. As I previously ruled in the motion to compel document production, the notion that Perlenfein made profits from Smith's actions does not affect this analysis. Doing work that generates profits for your employer does not entitle the employee on his own to take more for himself without the employer's agreement. Regardless of the gross amount of any profits, or how much higher they theoretically were, the employer is damaged to the extent of the commissions and bonuses it paid based on the false sales numbers. To put it differently, if Smith's allegations about profits were true, the profits would have been higher without the payment of Smith's fraudulent compensation. Therefore, the balance due to Perlenfein from Smith in the Settlement Agreement is nondischargeable under § 523(a)(2)(A).

**Section 523(a)(4):**

Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." § 523(a)(4). Smith asserts that Perlenfein has conceded the "fraud or defalcation" claim does not apply, because Smith was not "acting in a fiduciary capacity." *See* Defendant's Trial Memorandum (ECF No. 50), page 7 ("B&R has agreed to strike from Count 5 that portion of" the § 523(a)(4) claim). Such an agreement "to strike" is not clear to me from the pleadings, but Perlenfein has not provided any evidence of an express or other trust and appears to have abandoned that claim. To prevail on a claim for fraud or defalcation while acting in a fiduciary capacity, a plaintiff must prove the existence of an express or technical trust under state law. *See Mele v. Mele (In re Mele)*, 501 B.R. 357, 363 (9th Cir. BAP 2013); *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir. 1986) (general definition of fiduciary inapplicable). Although the complaint alleges Smith owed a fiduciary duty as a sales manager, Oregon law does not provide that an employment relationship or even a management

Page 7 of 14 – MEMORANDUM DECISION ON DISCHARGEABILITY

Case 21-06003-tmr    Doc 56    Filed 09/26/22

role creates an express trust. For those reasons, any claim for fraud or defalcation while acting in a fiduciary capacity fails in this case. The remaining two grounds of embezzlement and larceny stand independent of the fiduciary capacity requirement. *See Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 275 (2013).

Perlenfein asserts that the debt is excepted from the discharge under either embezzlement or larceny. The Supreme Court has stated that "[e]mbezzlement is the fraudulent appropriation of property by a person to whom such property has been intrusted, or into whose hands it has lawfully come. It differs from larceny in the fact that the original taking of the property was lawful, or with the consent of the owner, while in larceny the felonious intent must have existed at the time of the taking." *Moore v. U.S.*, 160 U.S. 268, 269-70 (1895) (criminal case). An embezzlement claim under bankruptcy law has "three elements: (1) property rightfully in the possession of a nonowner, (2) nonowner's appropriation of the property to a use other than that which it was entrusted, and (3) circumstances indicating fraud." *First Del. Life Ins. Co. v. Wada (In re Wada)*, 210 B.R. 572, 576 (9th Cir. BAP 1997) (citing *Transamerica Com. Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 555 (9th Cir. 1991)). The elements for larceny duplicate those for embezzlement except that the debtor has come into possession of the property wrongfully. *See Peltier v. Van Loo Fiduciary Servs., LLC, (In re Peltier)*, BAP No. OR-22-1000-FBG, 2022 WL 4181728, *6 (9th Cir. BAP Sept. 12, 2022) (published).

In our case, I heard no suggestion that Smith rightfully obtained possession or control of any funds or property belonging to Perlenfein. All the evidence described commissions and bonuses collected by Smith based on fraudulent sales data along with damages in the form of payments from Perlenfein to third parties. Although Perlenfein may be correct in asserting that a court may find embezzlement for property diverted to third parties, I don't need to make that

determination because the money paid was always under the control of Perlenfein and not Smith. Therefore, I find that Smith never had property of Perlenfein rightfully in his possession and that embezzlement does not apply. To the contrary, all the funds taken by Smith were wrongfully taken through his fraudulent computer entries and manipulation of purchase orders, credits, and sales data. That qualifies as larceny.

Federal common law defines larceny as the "felonious taking of another's personal property with intent to convert it or deprive the owner of the same." *See Ormsby v. First Am. Title Co. of Nevada (In re Ormsby)*, 591 F.3d 1199, 1205 (9th Cir. 2010) (citing 4 Collier on Bankruptcy ¶523.10[2] (15th ed. rev. 2008)). The Supreme Court has said that "'larceny' requires taking and carrying away another's property." *Bullock*, 569 U.S. at 275. Smith focuses on the "felonious" language and argues that he was not proceeding with an "evil heart" and that his conduct was not "villainous" in nature. *See* Smith Trial Memorandum (ECF No. 50), page 8. Despite the language quoted by Smith, I disagree with his interpretation of the case law. Smith focuses on the "evil heart" language, but "felonious" reflects the intentional nature of the act which was done "wrongly, unlawfully, and with intent to injure" the affected party. *Moore v. U.S.*, 160 U.S. at 271. The Ninth Circuit BAP likens larceny under bankruptcy law to a "culpable state of mind" which really involves the debtor's knowledge that the conduct is improper. *Peltier v. Van Loo*, 2022 WL 4181728, *8 (financial elder abuse claim). In our case, I find Smith knew that what he was doing was wrong and would injure Perlenfein.

In *Ormsby*, the Ninth Circuit reviewed whether an underlying state court judgment contained findings sufficient to make the debt nondischargeable under § 523(a)(4). The court compared the federal common law definition of larceny to the state law requirements for conversion and held that the state court findings made clear that the debtors acted with fraudulent

intent constituting larceny. *Ormsby*, 591 F.3d at 1206 (totality of circumstances). The court referenced "evil heart" in a footnote as part of the definition for "felonious" which only required a wrongful, intentional act, done without a proper excuse. *Ormsby*, 591 F.3d at 1205, n.4. Smith argues that he had no evil heart or villainous motive and maintains that increasing profitability was the purpose for his conduct. In reviewing the totality of the circumstances, I find that Smith kept his actions secret, did not promptly account for any unearned funds he received, and continued his actions for several years before they caught up with him. He obtained a personal benefit from the action, knew that those benefits would come directly from Perlenfein, did not obtain authorization for his secret methods, and did not turn over the funds to his employer. He knew he was taking property belonging to Perlenfein, and he knew what he was doing was wrong. I find that Smith's actions qualify as the "felonious taking of another's personal property with intent to convert it or deprive the owner of the same." *See Ormsby*, 591 F.3d at 1205. *See also King v. Lough (In re Lough)*, 422 B.R. 727, 736 (Bankr. D. Idaho 2010) (argument that "honest attempt to help" insufficient after failure to account for unauthorized sales); *U-Save Auto Rental of America v. Mickens (In re Mickens)*, 312 B.R. 666, 680-81 (Bankr. N.D. Cal. 2004) (actions done to save business with hopes of repaying in future not enough).

**Section 523(a)(6):**

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." *See* § 523(a)(6). "A determination whether a particular debt is for 'willful and malicious injury by the debtor to another' under section 523(a)(6) requires application of a two-pronged test to apply to the conduct giving rise to the injury. The creditor must prove that the debtor's conduct in causing the

injuries was both willful and malicious." *Suarez v. Barrett*, 400 B.R. at 736; *see also Ormsby*, 591 F.3d at 1206.

"Willfulness requires proof that the debtor deliberately or intentionally injured the creditor, and that in doing so, the debtor intended the consequences of his act, not just the act itself." *Suarez v. Barrett*, 400 B.R. at 736-37 (citing *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1143 (9th Cir. 2002) (in turn citing *Kawaauhau v. Geiger*, 523 U.S. 57 (1998)). The Supreme Court in *Kawaauhau v. Geiger* noted that in the construction of § 523(a)(6), "the word 'willful' … modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. at 61 (emphasis in original). The Ninth Circuit interpreted *Geiger* to hold that "the willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury *or* that the debtor believed that the injury was substantially certain to occur as a result of his conduct." *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir. 2002) (emphasis in original).

Smith intentionally manipulated the entries in the company software system to show increased sales and thereby increasing his compensation through higher salary, commissions, and bonuses. He knew that the compensation, which he had not earned, would necessarily come from his employer Perlenfein. In addition, he knew, as he testified, that the related damages would ultimately need addressing. He knew that Perlenfein would be injured financially because of his efforts to increase his compensation. "The Debtor is charged with the knowledge of the natural consequences of his actions." *Ormsby*, 591 F.3d at 1206. "In addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action." *Carrillo v.*

*Su*, 290 F.3d at 1146, n.6. Although Smith claimed he was just increasing profits for his employer, his actions made clear that he intended to take from, and thereby injure, his employer by creating false records to generate personal compensation to which he was not entitled and thereby causing related damages in the process. Such actions are willful.

In his defense, Smith argues that he lacked both actual knowledge that harm would occur and a subjective motive to injure Perlenfein. He goes so far as to argue that his actions were beneficial, because they created profits for Perlenfein. In *Jercich*, the debtor made similar arguments in claiming that he did not have a "specific intent" to harm the creditor. *See Petralia v. Jercich*, 238 F.3d at 1207 (debtor withheld payment of wages and knew that injury was substantially certain to occur). Smith knew that creating the false data would result in unearned compensation in the form of commissions and bonuses being paid to him by Perlenfein and that injury to Perlenfein was substantially certain to occur. Yet, he intentionally took those actions to benefit himself personally and injure Perlenfein. These actions demonstrate that he inflicted willful injury on Perlenfein.

Next, I turn to the malicious prong of the statute. Smith spent some time testifying and arguing that he held no hatred or ill-will toward Perlenfein and that he was proud to be employed by Perlenfein. That type of "malice in fact" addressed by Smith is not applicable in the dischargeability context. *See McIntyre v. Kavanaugh*, 242 U.S. 138, 142 (1916) (not necessary to prove special malice toward individual); *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 791 (9th Cir. 1997) ("malicious" does not require personal hatred, spite, or ill-will); *Impulsora Del Territorio Sur, S.A. v. Cecchini (In re Cecchini)*, 780 F.2d 1440, 1443 (9th Cir. 1986). In a criminal case reported after *Geiger* and *Jercich*, the Ninth Circuit discussed the absence of personal hatred, spite, grudge, or ill-will as a component of common law malice. *U.S. v. Kelly*,

676 F.3d 912, 918 (9th Cir. 2012) (citing *Murray v. Bammer*, 131 F.3d at 791 for bankruptcy definition of malice). Therefore, Smith's protestations of his good will are not controlling on the determination under § 523(a)(6).

To find Smith's conduct to be malicious under that statute, Perlenfein must prove that Smith: (1) committed a wrongful act; (2) done intentionally; (3) which necessarily causes injury; and (4) was done without just cause or excuse. *See Carrillo v. Su*, 290 F.3d at 1146-47; *see also Ormsby*, 591 F.3d at 1207. After establishing that the conduct was willful, the creditor can show malice "based on the nature of the wrongful act." *Ormsby*, 591 F.3d at 1207. As detailed above, Smith committed wrongful acts of inputting false data, hiding his actions, and failing to disclose or return compensation received from the false data. He did those acts intentionally, for the purpose of generating more personal income for himself. The increased personal income came at a cost to Perlenfein and necessarily caused it injury in both the compensation to Smith and the related damages to third parties. Smith seeks to excuse his conduct by arguing his actions were authorized and were done to generate more profits for Perlenfein. I do not believe his assertions in that regard and find his actions were done without just cause or excuse. Smith's conduct thus was willful. Therefore, the debt from the Settlement Agreement reflects damages incurred by willful and malicious injury to Perlenfein and is excepted from discharge under § 523(a)(6).

**Counterclaim:**

Smith filed counterclaims seeking attorney fees and costs under paragraph 10 of the Settlement Agreement, under § 523(d), and under Oregon state statute or contract. Smith is not the prevailing party in this proceeding, and paragraph 10, thus, does not allow him an award of attorney fees and costs. Because Perlenfein has succeeded on its claims, I find that its position was substantially justified and deny Smith's § 523(d) request on that basis. Smith has not

identified any other contract or statute providing a basis for attorney fees or costs, and I find that Smith is not entitled to attorney fees or costs under any other state statute or contract. I will enter judgment in favor of Perlenfein on the counterclaims

**Conclusion:**

    Based on the evidence received, and under the law as described in this memorandum, I find the amount due to Perlenfein from Smith in the Restated Confidential Severance and Settlement Agreement dated effective January 1, 2019, to be nondischargeable under §§ 523(a)(2)(A), (a)(4), and (a)(6). This memorandum sets forth my findings of fact and conclusions of law as required by Federal Rules of Civil Procedure 52(a), made applicable under Federal Rules of Bankruptcy Procedure 7052. They will not be separately stated, but they will be reduced to judgment separate from this memorandum. Counsel for Perlenfein should lodge a proposed judgment consistent with this ruling.

###